**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

ALLAN T. CUMMINGS, an
individual,

       Plaintiff - Appellant,

    v.

GALE NORTON, Secretary of the
Department of Interior,

       Defendant - Appellee.

No. 03-4280

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 2:99-CV-321-PGC)**

---

Erik Strindberg (Erika Birch with him on the briefs), Strindberg & Scholnick,
LLC, Salt Lake City, Utah, appearing for Plaintiff-Appellant.

Carlie Christensen, Assistant United States Attorney (Paul M. Warner, United
States Attorney, with her on the brief), Office of the United States Attorney, Salt
Lake City, Utah, appearing for Defendant-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **HENRY**, Circuit Judge, and **WHITE**,[*]
District Judge.

---

[*]Honorable Ronald A. White, District Judge, United States District Court
for the Eastern District of Oklahoma, sitting by designation.

**TACHA**, Chief Circuit Judge.

—————————————

The National Park Service ("Park Service") terminated Plaintiff-Appellant Allan T. Cummings's employment as a park ranger for making a series of misrepresentations on his employment applications. Mr. Cummings brought numerous discrimination claims in the District Court, including a failure to accommodate claim and a wrongful termination claim under the Rehabilitation Act of 1973. The District Court dismissed all claims on summary judgment. Mr. Cummings appeals only the wrongful termination claim, relying primarily on our opinion in *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997), to argue the District Court erred. In the District Court, however, Mr. Cummings only presented his "*Den Hartog* argument" in regard to his failure to accommodate claim—not the wrongful termination claim. Because Mr. Cummings's *Den Hartog* argument as it relates to his wrongful termination claim is advanced for the first time on appeal, we decline to consider it. Therefore, we take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Beginning in 1983, Mr. Cummings served as a seasonal park ranger for numerous summers, working as a level-two law enforcement ranger at Canyonlands National Park. Apparently, the hiring process for these seasonal positions is informal. The Park Service's staff would hire Mr. Cummings for a

2

seasonal position and then Mr. Cummings would, pro forma, fill out an employment application.

In 1988, Mr. Cummings applied for a position as a permanent law enforcement ranger at Canyonlands National Park. Chief Ranger Margaret Johnston did not hire Mr. Cummings because she believed he was an alcoholic. Mr. Cummings filed a grievance with the Equal Employment Opportunity Commission, arguing that he was discriminated against on the basis of a perceived disability. In 1993, an administrative law judge found in Mr. Cummings's favor.

The Park Service and Mr. Cummings then entered into a settlement agreement. The agreement included the following terms: (1) the Park Service would pay Mr. Cummings $10,000; (2) the Park Service would hire him as a permanent ranger at Arches National Park; (3) if Mr. Cummings had a favorable background check, the Park Service would enroll him in a law enforcement course at the Federal Law Enforcement Training Center in order to secure a permanent law enforcement position; and (4) if he could not pass the background check, he would be placed in an equivalent non-law enforcement position.

In October 1993, the Office of Personnel Management began its background check of Mr. Cummings for his enrollment at the Training Center. In January 1994, while the investigation was still in progress, Mr. Cummings began

3

working as a law enforcement ranger at Arches National Park. That February, Mr. Cummings failed the background check because the Office of Personnel Management found that he had made several misrepresentations on his employment applications with the Park Service. Because of the unfavorable background check, Mr. Cummings was reassigned to a ranger position without law enforcement duties.

The Park Service then conducted its own review of Mr. Cummings. Since 1983, Mr. Cummings had filled out fourteen employment applications with the Park Service. The investigation revealed that these applications were replete with misrepresentations and inconsistencies. For example, Mr. Cummings falsely claimed at various times that he had earned a college degree and received a Purple Heart. He further denied being convicted by either a court martial or civilian court. Based upon these misrepresentations, Arches National Park Superintendent, Noel Poe, moved to terminate Mr. Cummings's employment for falsifying government documents. In September of 1995, Superintendent Poe sent Mr. Cummings a "Proposed Removal Letter," which outlined the grounds for his dismissal.

In October 1995, Mr. Cummings responded to Deputy Field Director Robert W. Reynolds. In his letter, he noted that his employment as a ranger constituted part of a settlement agreement with the Park Service and that he suffered from

4

post-traumatic stress disorder ("PTSD") due to his military service in Vietnam. He also submitted a letter from therapist LeJean Sommerville. This letter stated that Mr. Cummings's PTSD caused memory lapses and blackouts that could affect his ability to fill out the applications correctly. Mr. Cummings was fired in March 1996.

In August 1999, Mr. Cummings commenced this suit. He brought six distinct causes of action in his amended complaint, including failure to accommodate and wrongful termination claims under the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794. All of his claims were dismissed on summary judgment. Mr. Cummings timely appeals, raising only his wrongful termination claim.

## II. STANDARD OF REVIEW

We review the District Court's grant of summary judgment de novo and apply the same standards used by the District Court. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to Mr.

5

Cummings. *Byers*, 150 F.3d at 1274.

## III. DISCUSSION

Mr. Cummings lacked direct evidence of discrimination. The District Court therefore analyzed his discrimination claims within the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[1] Under *McDonnell Douglas*, a plaintiff must first make a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a nondiscriminatory reason for its conduct. *Id.* at 802–03. The plaintiff then must show that the defendant's stated reason is merely pretextual. *Id.* at 804. To make a prima facie case for wrongful termination under the Rehabilitation Act, a plaintiff must establish three elements: (1) he was a disabled person under the statute, (2) he was otherwise qualified for the job regardless of the disability, and (3) he was terminated from his employment because of the disability. *Roberts v. Progressive Independence, Inc.*, 183 F.3d 1215, 1221 (10th Cir. 1999). The parties agree that Mr. Cummings meets the first two elements. The issue is

---

[1]Mr. Cummings asserts, apparently for the first time on appeal, that the *McDonnell Douglas* burden-shifting framework does not apply in this case. This Court, however, has clearly held that the *McDonnell Douglas* burden-shifting applies to Rehabilitation Act claims. *See Williams v. Widnall*, 79 F.3d 1003, 1005 n.3 (10th Cir. 1996). The concurring opinion in *Wells v. Colorado Department of Transportation*, 325 F.3d 1205, 1221 (10th Cir. 2003) (Hartz, J., concurring), relied on by Mr. Cummings, does not alter our duty to apply binding Tenth Circuit precedent.

whether the Park Service fired Mr. Cummings because of his PTSD.

In his brief opposing the Park Service's summary judgment motion, Mr. Cummings argued that he satisfied his initial burden on this element, although the evidence he raised in support of that argument is unclear. In response, the Park Service argued that it had a legitimate nondiscriminatory reason for firing Mr. Cummings: It fired him because he made misrepresentations on his employment applications, not because of his PTSD. The Park Service further argued that it did not learn of Mr. Cummings's PTSD until after it issued its Proposed Removal Letter; hence, Mr. Cummings could not have been fired because of his PTSD because the disability was unknown to the Park Service when it decided to fire him.

With the burden shifted back to Mr. Cummings, he replied that the Park Service's proposed legitimate non-discriminatory reasons were pretextual. He argued that the firing came too quickly after the settlement agreement, he had always been a good employee, and inaccurate employment forms do not provide sufficient grounds for termination. The District Court rejected these arguments, holding that they did not establish a genuine issue of material fact that the Park Service discriminated against him because of his disability.

On appeal, Mr. Cummings again argues that the Park Service's proffered grounds for termination were a mere pretext for discrimination. He does not,

however, make the same arguments on appeal that he made below. Instead, he now attempts to establish pretext by relying exclusively on *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997). In *Den Hartog*, we held that the Americans With Disabilities Act of 1991 ("ADA") prohibits employers from drawing a distinction between a disability and disability-caused conduct—except for drug and alcohol abuse—and then rely upon the disability-caused conduct as legitimate grounds for terminating employment.[2] 129 F.3d at 1086. Following *Den Hartog*, Mr. Cummings argues that he made misrepresentations on employment applications because of his disorder, and therefore the Park Service improperly relied on PTSD-caused conduct to fire him. As such, Mr. Cummings asserts that the Park Service's proffered reason for firing him was merely pretextual.

The Park Service contends that this *Den Hartog* argument is raised for the first time on appeal; therefore, we should not entertain it. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). The Park Service admits that Mr. Cummings made his *Den Hartog* argument in regard to his failure to accommodate claim. It argues,

---

[2]While *Den Hartog* concerned the ADA rather than the Rehabilitation Act, we note that the two Acts "impose identical obligations on employers." *Cisneros v. Wilson*, 226 F.3d 1113, 1124 (10th Cir. 2000). "Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge," *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999), and vice versa.

however, that raising an argument with respect to the failure to accommodate claim is insufficient to preserve the argument for appeal on the wrongful termination claim. We agree.

Mr. Cummings is attempting to appeal one cause of action using an argument advanced below for a different cause of action. Advancing an argument for one cause of action, however, does not constitute raising it for all causes of action. This conclusion follows logically from the general rule that issues not raised below are waived on appeal. In *Tele-Communications, Inc. v. Commissioner*, 104 F.3d 1229 (10th Cir.1997), in discussing why an appellate court seldom considers an issue not presented to the district court—especially when the appeal is of a summary judgment—we explained:

> This rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories . . . . In order to preserve the integrity of the appellate structure, we should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time . . . . Thus, an issue must be presented to, considered [and] decided by the trial court before it can be raised on appeal.

*Id*. at 1232-33 (quotations and internal citations omitted).

Because of the importance of raising an issue below, we have "consistently turned down the argument that the raising of a related theory was sufficient" to preserve an issue for appeal. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir.1993). Similar concerns arise in the present situation, and therefore we

9

hold that raising an argument with respect to one claim does not preserve that argument for appeal of a different claim.

This conclusion is consistent with other circuits' treatment of the issue. For example, in *Shabazz v. Aruz*, 336 F.3d 154 (2d Cir. 2003), a habeas petitioner appealed several claims based on *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which mandates disclosure of favorable and material evidence to a defendant upon request. In support of one of his *Brady* claims, the petitioner argued that the District Attorney's Office failed to disclose certain comments made by the trial court—which is prohibited under *Gordon v. United States*, 344 U.S. 414 (1953). *Shabazz*, 336 F.3d at 159–60. The Second Circuit refused to address petitioner's *Brady* argument in the context of *Gordon* because he had only raised the *Gordon* issue below in a different context:

> While petitioner cited *Gordon* in his objections to [the lower court's] report and recommendation, he did so in the context of arguing that "the prosecution cannot avoid its duty to disclose by keeping its promises to a witness general," citing *DuBoise v. Lefevre*, which he claimed was "a logical application of existing Supreme Court precedent announced in *Gordon v. United States*." *Id.* at 160 (internal citations omitted).

That reference, according to the Second Circuit, was not a sufficient assertion of a *Brady* claim based upon the District Attorney's Office's failure to disclose comments made by the trial court. *Id.* As such, it found that the issue was raised

10

for the first time on appeal and declined to consider it.[3] *Id.*

Here, in his brief opposing summary judgment, Mr. Cummings presented his *Den Hartog* argument when making his prima facie case for the failure to accommodate claim. He contended that the Park Service should have accommodated his disorder because his PTSD could not be separated from his PTSD-caused conduct. Similarly, Mr. Cummings relied on *Den Hartog* at the summary judgment hearing in regard to his failure to accommodate claim.

Our review of the record, however, reveals that Mr. Cummings never argued below that his termination was improperly based on PTSD-caused conduct. This conclusion is further supported by the fact that the District Court did not analyze the applicability of *Den Hartog* to the wrongful termination claim. We conclude, therefore, that *Den Hartog* was only considered in connection to Mr. Cummings's failure to accommodate claim, which is not raised on appeal.

Finally, Mr. Cummings's counsel stated during the summary judgment

---

[3]This approach is not unique to the Second Circuit. *See, e.g., Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1361–62 (Fed. Cir. 1998) (declining to address appellant's "written description argument" on appeal, even though it was asserted in the district court in the context of its 204-patent claim, because "[t]his is not the . . . written description argument that CellPro currently asserts on appeal."); *United States v. Hartzog*, 983 F.2d 604, 608 (4th Cir. 1993) (declining to hear petitioner's ex post facto argument because "[w]hile Hartzog did note at that hearing that the offenses charged under the different counts occurred while different versions of the Guidelines were in effect, he did so only in the context of arguing that the enhancement for a managerial role should not apply to all counts") (citations omitted).

hearing that although "we listed both . . . a failure to accommodate and terminate . . . . I don't know if there's really a difference, they are one in the same." This lone statement, however, does not sufficiently raise the *Den Hartog* argument in the wrongful termination context. The complaint and all the briefing in this case treat the two claims as distinct with *Den Hartog* only being addressed in relation to the failure to accommodate claim. Moreover, the record clearly establishes that the District Court and counsel for the Park Service took the *Den Hartog* argument as applying only to the failure to accommodate claim. This single statement simply is not sufficient reference to the *Den Hartog* argument in the wrongful termination context.

The applicability of *Den Hartog* to Mr. Cummings' wrongful termination claim under the Rehabilitation Act was never presented to the District Court. The District Court had no opportunity to rule on Mr. Cummings's *Den Hartog* argument in connection with his wrongful termination claim, nor did the Park Service have the chance to present evidence or argument in opposition to the application of *Den Hartog* to the wrongful termination claim. Mr. Cummings's contention that *Den Hartog* helps to raise a genuine issue of material fact on this claim, therefore, cannot be raised in this appeal.

## IV. CONCLUSION

Because Mr. Cummings raises his *Den Hartog* argument in conjunction

12

with his wrongful termination claim for the first time on appeal, we decline to consider the issue and AFFIRM.