**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FILED
United States Court of Appeals
Tenth Circuit

March 16, 2015

Elisabeth A. Shumaker
Clerk of Court

Equal Employment Opportunity
Commission,

          Plaintiff-Appellee,

   v.

Beverage Distributors Company,
LLC,

          Defendant-Appellant.

No. 14-1012

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:11-cv-02557-CMA-CBS)**

Scott Forman, Littler Mendelson, P.C., Miami, Florida (Joshua B. Kirkpatrick and Jennifer S. Harpole, Littler Mendelson, P.C., Denver, Colorado, with him on the brief), for Appellant.

James Tucker, Equal Employment Opportunity Commission, Washington, D.C. (P. David Lopez, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, and Jennifer S. Goldstein, Acting Assistant General Counsel, Equal Employment Opportunity Commission, Washington, D.C., with him on the brief), for Appellee.

Before **TYMKOVICH**, **HOLMES**, and **BACHARACH**, Circuit Judges.

**BACHARACH**, Circuit Judge.

This case involves a claim of employment discrimination. Mr. Michael Sungaila, who is legally blind, worked for Beverage Distributors Company. When his position was eliminated, Mr. Sungaila obtained a higher-paying job in the company's warehouse. But, Mr. Sungaila's employment was conditioned on passing a physical examination.

Mr. Sungaila passed the physical. But, the examining doctor stated that Mr. Sungaila would require workplace accommodations to mitigate the risks from his impaired vision. Beverage Distributors concluded that it could not reasonably accommodate Mr. Sungaila's condition and rescinded the offer of a job in the warehouse. Shortly thereafter, Mr. Sungaila found a lower-paying position with another company.

Mr. Sungaila filed a discrimination claim with the Equal Employment Opportunity Commission, which then sued Beverage Distributors on Mr. Sungaila's behalf under the Americans with Disabilities Act.

At trial, Beverage Distributors asserted two defenses.

1. *Direct Threat*. Beverage Distributors stated that Mr. Sungaila's impaired vision would create a significant risk of harm to himself and others and no reasonable accommodations could reduce or eliminate that risk.

2. *Failure to Mitigate Damages*. Beverage Distributors added that if Mr. Sungaila were to prevail, the fact-finder should reduce the award because of a failure to mitigate damages.

The jury found that Beverage Distributors was liable for discrimination and that Mr. Sungaila was not a direct threat. But, the jury

2

also found that Mr. Sungaila had failed to mitigate his damages. Based on these findings, the jury awarded Mr. Sungaila a reduced back pay award because of his failure to mitigate.

The EEOC filed two post-trial motions. In the first motion, the EEOC invoked Federal Rule of Civil Procedure 50(a) and argued that Beverage Distributors had not proven as a matter of law that Mr. Sungaila failed to mitigate his damages. The court agreed and reinstated the full damage award. In the second motion, the EEOC sought a tax-penalty offset to compensate Mr. Sungaila for the additional tax liability resulting from the lump-sum award of back pay. The court granted that motion and awarded the tax offset.

Beverage Distributors appeals, arguing in part:

1.     The direct-threat instruction constitutes reversible error; and

2.     the district court abused its discretion in awarding the tax offset.

We reverse because the direct-threat jury instruction constituted error. But, if the EEOC prevails upon retrial, Mr. Sungaila may be entitled to a tax offset.

## I.     Direct-Threat Instruction

Beverage Distributors argues that the direct-threat instruction constituted reversible error. We agree, concluding that the instruction inaccurately conveyed the direct-threat standard.

3

## A. Standard of Review

We first consider whether the direct-threat instruction is erroneous. In doing so, we review the entire instruction de novo[1] to determine whether it accurately states the governing law. *Gardetto v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996).

## B. Direct-Threat Defense

The direct-threat defense stems from the Americans with Disabilities Act. Under the Act, an employer cannot discriminate on the basis of a disability. *See* 42 U.S.C. § 12112(a). But, an employer may decide not to hire disabled individuals if they pose a "direct threat to the health or safety" of themselves or others. 29 C.F.R. § 1630.15(b)(2). A "direct threat" involves "a significant risk of substantial harm to the health or safety of the [person] or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r).

The existence of a direct threat is an affirmative defense to a statutory claim of discrimination. *McKenzie v. Benton*, 388 F.3d 1342, 1353-54 (10th Cir. 2004). For this defense, Beverage Distributors had to

---

[1] The EEOC urges an abuse-of-discretion standard. We disagree. That standard is appropriate only when we are reviewing a district court's decision to give (or not to give) a specific instruction. *See Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012) (stating that appellate courts "review a district court's decision to give a particular jury instruction for abuse of discretion"). Here, we are reviewing the legal sufficiency of an instruction, which is a question we review de novo. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1237 (10th Cir. 2002); *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009).

4

show that it reasonably determined that Mr. Sungaila had posed a direct threat. *See Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007) (stating that "the fact-finder does not independently assess whether it believes that the employee posed a direct threat," but "determine[s] [instead] whether the employer's decision was objectively reasonable").

In sum, Beverage Distributors could avoid liability by showing that it reasonably determined:

1.  Mr. Sungaila posed a significant risk of substantial harm to the health or safety of himself or others, and

2.  that risk could not be eliminated or reduced by reasonable accommodation.

## C.    The Direct-Threat Instruction

We consider these elements to determine whether the district court correctly instructed the jury. Doing so, we conclude that the instruction did not accurately convey the direct-threat standard.

The direct-threat instruction contained two parts. The first part explained what Beverage Distributors had to "prove" to establish the defense:

To establish this defense, Beverage Distributors must prove both of the following by a preponderance of the evidence:

1.  Mr. Sungaila's employment in a Night Warehouse position posed a significant risk of substantial harm to the health or safety of Mr. Sungaila and/or other employees; and

5

2.   Such a risk could not have been eliminated or reduced by reasonable accommodation.

Appellant's App. at 78. The second part of the instruction elaborated on the standard:

> The determination that a direct threat exists must have been based on a specific personal assessment of Mr. Sungaila's ability to safely perform the essential functions of the job. This assessment of Mr. Sungaila's ability must have been based on either a reasonable medical judgment that relied on medical knowledge [or best objective evidence] available at the time of assessment . . . . An employer's subjective belief that a direct threat exists, even if maintained in good faith, is not sufficient unless it is objectively reasonable.
>
> . . . .
>
> In determining whether Beverage Distributors acted objectively reasonably when it determined that Mr. Sungaila was a direct threat, you must consider the following factors: (a) the duration of the risk; (b) the nature and severity of the potential harm; (c) the likelihood that the potential harm would occur; and (d) the imminence of the potential harm.

*Id.* The instruction did not accurately convey the direct-threat standard.

The first part of the instruction required Beverage Distributors to prove more than what was legally necessary. According to the first part, Beverage Distributors had to prove that Mr. Sungaila posed a direct threat. That was not accurate under our case law. Beverage Distributors should have avoided liability if it had reasonably believed the job would entail a direct threat; proof of an actual threat should have been unnecessary. *See Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007) ("[T]he fact-finder does not independently assess whether it believes that the employee posed

6

a direct threat."). Thus, the instruction overstated Beverage Distributors'

burden. *See Menne v. Celotex Corp.*, 861 F.2d 1453, 1470-71 (10th Cir.

1988) (concluding that jury instructions were erroneous because they

confused the burden of proof).

The second part of the instruction did not cure the error. This part

stated that the jury was to consider the reasonableness of Beverage

Distributors' belief regarding the existence of a direct threat. But, the jury

was never told why it was to consider the reasonableness of what Beverage

Distributors thought. Thus, the error was not cured by a reference in the

instruction to the reasonableness of the company's subjective belief.[2]

In sum, the instruction was erroneous. The first part of the

instruction inaccurately stated that Beverage Distributors had to prove that

Mr. Sungaila posed a direct threat. And the second part of the instruction

did not cure the error by directing the jury, without explanation, to

consider the reasonableness of Beverage Distributors' belief.

---

[2] The EEOC suggests that the instruction directed the jury to consider Beverage Distributors' subjective determination by referring to that determination in the past tense. For instance, the instruction stated that "[t]he determination that a direct threat exist[ed] *must have been based* on a specific personal assessment of Mr. Sungaila's ability to safely perform the essential functions of the job." Appellant's App. at 78 (emphasis added). We reject this argument. Even if the instruction had directed the jury to consider Beverage Distributors' determination, that determination was about the "existence" of a direct threat, not the objective reasonableness of the determination.

7

### D. Need for Reversal

We must reverse if the jury might have relied on an erroneous jury instruction. *Level 3 Commc'n, LLC v. Liebert Corp.*, 535 F.3d 1146, 1158 (10th Cir. 2008). Thus, reversal is warranted even if it is "very unlikely" that the jury relied on the erroneous standard. *Id.*

We conclude that the jury might have relied on the erroneous direct-threat standard; thus, reversal is warranted. The inaccurate standard appeared prominently in the instruction, and the verdict form directed the jury to consider that erroneous standard. *See* Appellant's App. at 91 ("Did Defendant Beverage Distributors prove . . . *both elements* of its affirmative defense that Mr. Sungaila's employment in the Night Warehouse position *posed a direct threat* to himself or other employees . . . ?" (emphasis added)). Because the instruction and verdict form could have misled the jury on the standard, we must reverse.

## II. Mitigation of Damages

Beverage Distributors also argues that the district court erroneously granted the EEOC's Rule 50(a) motion, arguing that the evidence could have allowed the jury to find a failure to mitigate damages. We need not decide this issue. The sufficiency of the evidence entails a fact-intensive inquiry, and the mitigation evidence may be different on remand. Thus, we

8

decline to address the sufficiency of the mitigation evidence.[3] *See Doering*

*ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1216 (10th Cir.

2001) (declining to address the award of punitive damages when the Court

reversed the judgment based on error in the jury instructions).

## III. Tax Offset

Beverage Distributors argues that the district court abused its

discretion in awarding Mr. Sungaila a tax penalty offset.[4] This issue is

affected by our reversal of the EEOC's award. On remand, this issue might

or might not recur. But, unlike mitigation of damages, the tax offset issue

is primarily legal rather than factual. Thus, we will address the issue.

Doing so, we conclude that the district court did not err in awarding a tax

offset.

---

[3] The EEOC has suggested that we might lack jurisdiction over this part of the appeal. Appellee's Supp. Resp. Br. at 12 n.5 (Feb. 5, 2015). Because we are declining to address the issue on other grounds, we need not address the EEOC's suggestion that we lack jurisdiction.

[4] Beverage Distributors also asserts that the offset award constituted unlawful additur in violation of the Seventh Amendment. But, the company did not raise this argument in district court. *See* Appellee's Supp. App. at 7-8. Thus, this argument has been forfeited. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005). Though we can consider forfeited arguments under the plain-error standard, Beverage Distributors has not argued plain error. *See Bishop v. Smith*, 760 F.3d 1070, 1095 (10th Cir. 2014) (stating that we will not consider the possibility of plain error on a forfeited theory when the claimant fails to argue for plain error), *cert. denied*, __ U.S. __, 135 S. Ct. 271 (2014).

## A.     Jurisdiction

The EEOC argues that we lack jurisdiction because the notice of appeal preceded the district court's entry of judgment and computation of the amount. *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999) (discussing prematurity of an appeal involving a post-judgment award of attorneys' fees). But, we conclude that we have jurisdiction on the tax offset issue.

Even if the notice of appeal had been premature, Beverage Distributors filed a post-judgment motion for a stay pending appeal. This motion (1) specified that Beverage Distributors was taking the appeal, (2) stated that the company was appealing the "monetary components" of the district court's amended order, which would necessarily include the tax offset award, and (3) stated that the appeal was to our court. Def.'s Mot. for Stay Pending Appeal at 1, *EEOC v. Beverage Distributs. Co., LLC,* No. 1:11-cv-02557-CBA-CBS (filed May 13, 2014), Doc. No. 137. Thus, the motion for a stay served as the "functional equivalent" of a notice of appeal under Federal Rule of Appellate Procedure 3. *See Smith v. Barry*, 502 U.S. 244, 248-49 (1992) ("If a document . . . gives the notice required by Rule 3, it is effective as a notice of appeal."). In these circumstances, we have appellate jurisdiction.

10

## B.     Merits

Courts have broad discretion in prescribing remedies for victims of discrimination. *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976). One such remedy is a tax penalty offset, which compensates victims for additional tax liabilities they would incur as a result of a lump-sum payment. *See Sears v. Atchison Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984) (awarding a tax offset for victims of discrimination).

The district court determined that Mr. Sungaila was entitled to a tax penalty offset. Mr. Sungaila obtained a lump-sum damage award, which would increase his tax liability.[5] Given this result, the court concluded that an offset would compensate Mr. Sungaila for the added liability and "restore [him] to the position he would have been but for his wrongful separation from Beverage Distributors." *EEOC v. Beverage Distribs. Co.*, LLC, No. 11-cv-02557, 2013 WL 6458735, at *8 (D. Colo. Dec. 9, 2013).

This award fell within the district court's discretion. Mr. Sungaila obtained a lump-sum damage award that would increase his tax liability. And the court acted within its discretion in compensating Mr. Sungaila for the added burden.

---

[5]     The parties do not dispute that the lump-sum award would increase Mr. Sungaila's tax liability.

11

Beverage Distributors disagrees. In its view, Mr. Sungaila is not entitled to the offset because his added tax burden would not be "significant." Appellant's Opening Br. at 39. This argument is based on *Blim v. W. Elec. Co.*, 731 F.2d 1473 (10th Cir. 1984). We are not persuaded.

In *Blim*, we concluded that a tax offset award was improper because the plaintiffs would "suffer no significant tax penalty." 731 F.2d at 1480. The penalty would not have been "significant" because the plaintiffs could eliminate "nearly all" of their additional tax liability by using the tax code's averaging provisions. *Id.*

That reasoning is inapplicable here. Unlike the plaintiffs in *Blim*, Mr. Sungaila cannot lighten his additional tax liability because Congress repealed the averaging provisions in 1986. *See* Tax Reform Act of 1986, Pub. L. No. 99-514, § 141(a), 100 Stat. 2117 (repealing 26 U.S.C. §§ 1302-1305). Without other ways of reducing the added tax liability, Mr. Sungaila would experience a tax disadvantage that the *Blim* plaintiffs were able to avoid.

Beverage Distributors also contends that Mr. Sungaila is not entitled to an offset because his case is "typical." Appellant's Opening Br. at 39. This contention is based on our opinion in *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, where we affirmed an offset award while suggesting that such an award "may not be appropriate in a typical [discrimination] case."

749 F.2d 1451, 1456 (10th Cir. 1984). But, we did not hold that tax offsets were limited to atypical cases. In our view, the district court acted within its discretion even if Mr. Sungaila's situation might be considered "typical." *See, e.g.*, *EEOC v. N. Star Hospitality, Inc.*, __ F.3d __, No. 14-1660, 2015 WL 363997, at *5 (7th Cir. Jan. 29, 2015) (upholding an award of a tax offset in an EEOC claim on behalf of a single plaintiff in order to make the plaintiff "whole").

Accordingly, we conclude that the district court did not err in awarding a tax offset.

## IV.    Conclusion

We conclude that (1) the direct-threat jury instruction constituted reversible error, and (2) the district court did not err in awarding a tax offset.